Good morning, Your Honors. Michael Quirk for Plaintiff's Appellants, Brian O'Donnell, and Michael and Patricia van Belgen. I'd like to reserve two minutes of my time for rebuttal. Okay. Bank of America drafted its adjustable rate mortgage agreements with plaintiffs to tell them, I will pay principal and interest by making a payment every month, and then stated a specific monthly payment amount that each plaintiff was to make. Plaintiffs proceeded to make payments in these amounts, but Bank of America applied their payments in a way that did not pay any principal, but instead caused the mortgage principal they owed to go up every month. Plaintiffs brought this action, alleging that Bank of America breached its agreement by failing to apply their scheduled payments to reduce the principal and or committed statutory or common law fraud. Do you think that would specify quite clearly how the – how the payments are going to be applied, the contract? The – I'm sorry. I didn't catch that. Doesn't the contract clearly state how the payments are to be applied? The – it's – no, it doesn't, because it says different things pointing in different directions. The – on the one hand, it tells the plaintiff that by making the payment every month, he or she will pay principal and interest. Now, further on down, it is – It doesn't say that. It says, I will pay principal and interest by making a payment every month. It doesn't say that every payment would be applied to principal and interest. It doesn't say that. It – it can be read to say that, in that – But then if you – if you read the succeeding sentences, it says, if my monthly payment is less than the amount necessary to pay a full amount of interest for that month, the portion of interest that is unpaid will be added to principal balance. So if you read just a couple of sentences past that, isn't the contract read, you know, with all sentences being read from a common-sense way together? Well, there – the contract is to be read to give all of the sentences effect. Now, the way that those two sentences could have effect is that the first one, the one that we're primarily relying on, would be read to require application of some of the scheduled payment to principal. The second sentence, the allocation sentence, could be read that if the payment is made in a lesser amount, because it does say each monthly payment, that if a payment is read in a lesser amount, this is the order of allocation, that it gets – the lesser amount gets allocated first to interest, and then if there is any left, to principal. The problem with reading the I will pay principal in interest not to require the scheduled payment to go to principal is that it has no other possible effect. What Bank of America has argued and what the district court found was that this just means that by the – I'm sorry. I'm not sure what you mean by it has no other possible effect. Well, the – It at the very least says that it's not going to go to administrative fees or, you know, something else. Your payment goes to principal in interest. It doesn't go to some other – it says at least that. Well, but it says principal and interest. But it says at least. It says it has no other meaning. Well, the only other meaning that Bank of America has tried to give to it is that by making the payments, the plaintiffs will eventually pay down all of the principal in interest. And that's not a standalone meaning, because there's a separate sentence, two sentences after that, that says exactly that. Let me ask you a question on a different matter, unless my colleagues have a question on this. Do we have jurisdiction? You've dismissed your only federal claim, right? That's correct. So how do we have jurisdiction at this point? Well, the district court had jurisdiction over – It did at the time it ruled, but you have since dismissed the only basis of jurisdiction which you had, which is a federal claim. As best I can tell, there's nothing left.  But diversity jurisdiction has to be alleged improvement usually in the district court. I mean, did you allege diversity in your complaint? Was it – I would need to look back at the complaint. My understanding is that – Go ahead. We would have alleged both. Go ahead. I don't think you alleged diversity jurisdiction, did you? Do you want to think about it and address it on rebuttal? It's – We did allege both in that we also invoked 28 U.S.C. 1331. And what does the complaint provide in terms of – Pardon me? Proving up diversity? Well, in this – The diversity in this case would arise by virtue of the fact that it's a class action filed several years after enactment of the Class Action Fairness Act, that the named plaintiffs and the defendant are citizens of different states, and that the amount in controversy would exceed $5 million. The class-wide controversy would exceed $5 million. What about diversity again? What about diversity of citizenship? The diversity of citizenship would be by virtue of plaintiffs being citizens of California and Bank of America being a citizen of another state. And the complaint alleges that. The complaint does not specify what state Bank of America is a citizen of. It's a matter of a teaching point. When a judge asks you a question like that, the judge usually knows the answer. Okay. And the answer is no, right? The – it doesn't allege any other state. That's correct. The – as – but as to the questions that the appeal presents, if the Court does find that there is jurisdiction, the – as to the breach of contract argument, we would urge the Court to find that the only independent meaning given to the I will pay principal and interest provision is the interpretation we gave, that it requires payment of at least some of the – application of some of the scheduled payment to principal. Turning to the preemption question, the Federal preemption question for the common law fraud. At a jurisdictional point, you might check out 28 U.S.C. 1653 and see if you need to do anything to perfect jurisdiction on appeal. 28 U.S.C. Write it down. Okay. 28 U.S.C. 1653. But as to the preemption question, I think boiled down, the preemption question comes to – comes down to do plaintiffs' common law fraud and UCL claims – do they forbid or impair significantly the exercise of a power that Congress explicitly granted to a national bank? And the – under the Office of Comptroller of the Currency's regulation, the operative question would be do these claims require Bank of America to make specific statements in its loan documents? And the answer to that is that they do not. The plaintiffs' claims, both fraud and UCL, are based on a common law fraudulent omission standard where the key California case on this point is the Vega v. Jones Day case cited in our briefs. And the standard is that even where no duty to disclose would otherwise exist, where one does speak, he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated. That's exactly what happened here. But the Federal Regulation requires some disclosures, right? It doesn't – it doesn't require some disclosures in that Bank of America could not commit the fraudulent omission that we allege either by saying something more to clarify the relationship between the payment amount given and the I will pay principle and interest statement, or it could not make the I will pay principle and interest statement at all. I mean, that's why we relied on the Supreme Court's decision in the light cigarettes case, Altria v. Good. That was a case where the defendant said light cigarettes omitted, concealed the fact that the cigarettes would deliver just as much tar and nicotine. The preemption question was, is that omitted statement a requirement concerning health or smoking? And what the Supreme Court said is, no, it didn't require Altria to do anything at all. It just prohibited it from marketing its cigarettes as light while at – while omitting the fact that they deliver just as much tar and nicotine. That's, I think, the closest case both as to the law and to the elements of the State law claim alleged, and the Supreme Court's finding of no preemption there is in control here. If there's no more questions, I'll reserve. There's nothing to reserve. Thank you. Thank you. May it please the Court. Brian Matsui on behalf of Bank of America. Obviously, if this Court rules that there's no jurisdiction in this case, there's nothing left for this appeal, but – What's your view on the jurisdictional question? Pardon, Your Honor? What is your view on the jurisdictional question? I would think that – You didn't seem to object to jurisdiction. We did not object to jurisdiction, but obviously, as the Court just pointed out, the Court has to take it upon itself to ensure it has jurisdiction. Looking at the complaint, there is no allegation of diversity of jurisdiction with respect to amount and controversy or diversity of citizenship. Did you move to dismiss below once the Federal claim was gone? They stipulated – they – Ask for a yes or no. Did you move to dismiss after plaintiffs dismissed their Federal claim? No. No. No is the correct answer. Well, they just – the complaint – I didn't ask you for an exclamation. I asked you yes or no. The dismissal of the Federal claims came after the State law claims were dismissed. Did you move to dismiss? No, we did not move to dismiss. They were – Why not? We had previously moved to dismiss the Federal claims, but the district court had denied our motion to dismiss on the TILA claims and held that – and so those actions were live within the district court before – were live in the district court after the district court had dismissed the State law claims based upon the breach of contract in the Federal preemption. Did you concede jurisdiction in your brief? We – we did agree with the district court. Again, I'm asking for an exclamation. Yes. We agreed with the jurisdiction, but as this Court has acknowledged, it has a duty upon itself to determine whether or not it has jurisdiction. So it's not something that we could actually waive before this Court, as I'm – as the Court is well aware, and I apologize for stating something that's obvious to the Court. But if the Court were to determine that there is jurisdiction in this – in this case, with respect to the contract action, we would just simply note that the contract does delineate how the payments are supposed to be made, and it does clearly set forth the very options that the plaintiff has – the borrowers have when they have the options to make their payments every month, and it sets forth how, if you make the minimum required payment, it can lead to negative amortization. Where in the loan documents is it stated that the amount shown on – I think it's the TILA disclosure, the $1,500-plus monthly payments for 12 months on the O'Donnell statement is based on the 1 percent rate that only applies for the first month of the loan? Well, the TILA disclosure statement, it's – I mean, Your Honor, it's on, I guess, ER-82. But, I mean, what the – what the TILA disclosure statement does, under regular statute – But where at at ER-82? I mean – I mean, it doesn't set that forth. This is a Federal disclosure requirement that the bank has to calculate the payment schedule based upon – Shouldn't that have been set forth? That would be a question of Federal law, and the bank – the bank complied with Federal law when it set forth this payment schedule based upon the obligations of the parties at the time they entered into the agreement. And the bank doesn't have the ability to alter that. Where on the disclosures do the amounts owed account for unpaid interest that is accruing on a monthly basis if negative amortization occurs? Well, Your Honor, these are additional – there is not – there are not these types of disclosures on the disclosure statement. But that's precise to the point, that what you have here is a State law cause of action, and you have to look at the duty that's being imposed by the State law cause of action, and it would require additional disclosure requirements upon the bank in order to exercise its real estate lending powers. It would be a condition. And it doesn't matter that it's a law of general application, labels of tort. The fact of the matter is, I mean, if we look at ER-64 of the complaint, it says that the – it says that the bank had a duty, in paragraph 64 of the complaint, it had a duty to disclose certain information about the interest rate and the possibility of negative amortization and the payment schedule. Did anywhere – I mean, did the monthly statements that the O'Donnells received show the – show them the amounts they could pay for interest-only and interest-in-principle payments, since those amounts were invariably greater than the minimum monthly payment? Well, if you – It's not clear that they ever got a snapshot. In the supplemental excerpts of record at page 5, it says your billing statement will show as many as three separate payment options. And then it goes forth and sets forth the minimum payment, the interest-only payment, and the principle and interest payment. And so this is what was provided to the borrower before they entered into the agreement. This is what they had in front of them. So they were provided this information. But the fact of the matter is, is that this would still be imposing additional State law disclosures on the national bank, which is not permitted by the 12 CFR 34.4a. And it doesn't matter that it's a law of general application. It imposes a State law duty. If there's no further questions. Okay. Thank you. We are out of time. Would you like to take a minute for rebuttal? Do I still have my two minutes? You didn't take it. I'll give you a minute if you want, like. Thank you, Your Honor. I would just – I would like to just respond to two points. One, counsel for Bank of America referred to statements that will be in plaintiff's billing statements. That's future looking. Those are documents that didn't exist at the time this loan agreement came into being. So the idea that they're part of the agreement when they don't even exist yet, that's not information that was given to plaintiffs when these agreements were formed. Two, as to whether the plaintiff's claims require any specific statement, I would refer to paragraph 65 of the complaint, which sets out the omission based on a partial and inaccurate representation. And that's exactly what we have here. The closing comment is that if you look at the disclosure form on page ER82, it says what is required to be said in the Federal law, and they're not entitled to change it, they can't change it. The Federal law prohibits them from changing it. How do you answer that argument? Well, Federal law only would apply to the truth in lending disclosure statement, not to the note. And the primary fraudulent omission that we allege is in the note. The note is what says I will pay principal and interest by making a payment every month, and then gives a payment amount that won't pay principal and interest. And that it's the omission of that disconnection is the primary fraud. And that Bank of America could cure that either by clarifying the connection or by not making the I will pay principal representation in the first place, just like Altria didn't have to say light cigarettes when its cigarettes weren't any lighter than regular. That's why it's not a State imposed disclosure requirement. That's why it falls under the Regulation Savings Clause for State tort law, which would include a fraud standard that doesn't require a specific statement to prove its deception. Thank you. Thank you. Mr. Sargi, we'll stand to move.
judges: Kozinski, Hawkins, Murguia